NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2218
_____

UNITED STATES OF AMERICA

v.

RONALD WATSON,
also known as Joseph

Ronald Watson,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-03-cr-00124-001)
District Judge:  Honorable Thomas I. Vanaskie
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 17, 2012

Before:  SMITH and FISHER, *Circuit Judges*, and STEARNS,[*]*District Judge*.

(Filed: May 17, 2012 )
_____

OPINION OF THE COURT
_____

---

[*] The Honorable Richard G. Stearns, District Judge for the United States District Court for the District of Massachusetts, sitting by designation.

FISHER, *Circuit Judge*.

Ronald Watson appeals from the judgment of the U.S. District Court for the Middle District of Pennsylvania, which found that Watson violated the conditions of his supervised release and sentenced him to three months' imprisonment and three additional years of supervised release. His counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). For the reasons stated below, we will grant counsel's motion to withdraw and will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In October of 2010, upon completing his term of imprisonment for a 2006 conviction, Ronald Watson commenced a three-year term of supervised release. In March of 2011, Watson pleaded guilty to disorderly conduct under Pennsylvania law. His conviction constituted a violation of the terms of his supervised release. Rather than instituting a revocation hearing, the District Court ordered a modification of Watson's conditions of supervised release to include a 60-day placement at the Lackawanna Work Release Center ("WRC"), pursuant to agreement between Watson and the Probation Office. As a condition of participating in the WRC program, Watson was instructed that he would need to adhere to WRC rules, which provided, in relevant part, that a

participant is "not permitted to quit or change jobs without receiving approval from the Director," "must have permission from the Director to work a second job," cannot take time off to look for another job without approval, must report to work on time, and may be dismissed from the program after an evaluation hearing if fired from a job.

Keith Herne, Watson's probation officer, directed Watson to report to the WRC on Monday, March 28, at 11:00 a.m. Watson never reported for work that day, but instead, without telling Herne or the WRC, went to Career Link, a job placement center. Watson testified that he had previously told Herne, on March 10, that he would be participating in the Career Link program for three consecutive Mondays. Herne contacted Watson, who agreed to report to the WRC the next day, March 29, at 8:00 a.m. Because of travel difficulties, Watson reported at around 9:30 a.m. Although Rick Horan, the WRC Director, initially dismissed Watson from the program for his late arrival, Horan later changed his mind and allowed Watson into the program.

The WRC placed Watson with Amerisource, a temp agency, which assigned Watson to begin working at Kane Warehouse on March 31. On April 3, Watson spoke with a WRC employee about changing jobs. He was told that the Director would have to be notified if he wanted to change jobs, and that he needed to keep the Kane placement until something else arose. Watson testified that he had a conversation with a WRC staff member about changing jobs, and that the staff member and Amerisource directed him not to show up for work on April 4. On April 4, Watson was not on the Amerisource bus

3

to Kane and did not report to work. When WRC staff confronted Watson about missing work, he told them that he did not like working at Kane and wanted another assignment. On April 5, Horan dismissed Watson from the WRC program for violating WRC rules.

After a hearing at which Watson, Herne, Horan, and various WRC employees testified, the District Court determined that Watson had violated the conditions of his supervised release by breaking WRC rules. Watson was sentenced to three months' imprisonment and a three-year term of supervised release. Watson filed a timely notice of appeal, and his counsel subsequently filed a motion to withdraw representation. Watson declined to file a pro se brief.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

Counsel may file a motion to withdraw representation under *Anders v. California*, 386 U.S. 738 (1967), if, after reviewing the district court's record, he or she is "persuaded that the appeal presents no issue of even arguable merit." 3d Cir. L.A.R. 109.2(a); *United States v. Youla,* 241 F.3d 296, 300 (3d Cir. 2001) (quoting 3d Cir. L.A.R. 109.2(a)). In evaluating counsel's *Anders* brief, we must be satisfied that counsel "has thoroughly scoured the record in search of appealable issues and . . . explain[ed] why the issues are frivolous." *United States v. Coleman*, 575 F.3d 316, 319 (3d Cir. 2009) (internal quotations marks and citation omitted). Our *Anders* inquiry is thus twofold:

(1) "whether counsel adequately fulfilled the . . . requirements [of 3d Cir. L.A.R. 109.2(a)]; and (2) whether an independent review of the record presents any non-frivolous issues." *Youla,* 241 F.3d at 300 (citation omitted). If we determine that "the *Anders* brief initially appears adequate on its face," the second step of our inquiry is "guided . . . by the *Anders* brief itself." *Id.* at 301 (quotation marks and citation omitted).

We review the District Court's decision to revoke supervised release for abuse of discretion. *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008). "[F]actual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review." *Id.* We review sentences for both procedural and substantive reasonableness, applying an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

## III.

Counsel's *Anders* brief satisfies us that he has "scoured" the record for appealable issues, and we agree that there are no non-frivolous issues presented.

First, we agree with counsel that there are no non-frivolous jurisdictional or due process issues on which Watson could appeal. The District Court had subject matter jurisdiction over Watson's underlying substantive offense under 18 U.S.C. § 3231, and was authorized to revoke his supervised release under 18 U.S.C. § 3583(e). Moreover, the District Court complied with the requirements of due process in revoking Watson's supervised release. *See* Fed. R. Crim. P. 32.1(b)(2); *United States v. Barnhart*, 980 F.2d

5

219, 222 (3d Cir. 1992) (listing due process requirements for revocation of supervised release). Watson had notice of the alleged violation, the evidence against him was disclosed, he had the opportunity to be heard in person and present witnesses and evidence, he was given (and took) the opportunity to cross examine witnesses, and he received a written judgment specifying the violation for which his release was revoked. *See Barnhart*, 980 F.2d at 222 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)).

Second, we agree that there are no non-frivolous issues relating to the District Court's finding of a violation of Watson's supervised release. A preponderance of the evidence clearly supports the District Court's finding that Watson violated his obligation to observe WRC rules. *See* 18 U.S.C. § 3583(e)(3); *Maloney*, 513 F.3d at 354 (3d Cir. 2008). The Government established that Watson was placed in the WRC program, as a condition of which he was subject to WRC rules. The rules required Watson to report to work on time and to obtain the Director's approval before changing jobs, quitting jobs, or taking time off to look for another job. The Government also established that Watson broke these rules because, absent approval, he did not report for work at the WRC on Monday, March 28, 2011, or at the Kane Warehouse on April 4, 2011. The District Court's determination that Watson's testimony that an Amerisource employee told him not to report to work on April 4 was not credible is equally unassailable, because it finds adequate support in the record. *See United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998). Furthermore, although Watson argued at the hearing that he never quit his "job"

6

with Amerisource, just his temporary assignment at Kane, the two are functionally equivalent: Watson stopped working at the position he had been assigned under the WRC program without permission.

Third, we agree with counsel that there are no non-frivolous issues relating to Watson's sentence for violating supervised release. Watson's technical violation of his conditions of supervised release qualified as a Grade C violation under U.S.S.G. § 7B1.1(a)(3)(B), which, along with his criminal history category of III, subjected him to a Guidelines range of five to eleventh months' imprisonment. U.S.S.G. § 7B1.4(a). The District Court nevertheless sentenced Watson to a below-Guidelines term of imprisonment of three months, to be followed by a three-year term of supervised release, after consideration of the 18 U.S.C. § 3553(a) sentencing factors. We detect no procedural errors in these calculations. *See Tomko*, 562 F.3d at 567-68. Nor is Watson's below-Guidelines sentence substantively unreasonable, because we cannot say that "no reasonable sentencing court would have imposed the same sentence . . . for the reasons the district court provided." *Id.* at 568.

Watsons's appeal lacks any basis in law or fact. Accordingly, we agree with counsel that the record presents no issues of even arguable merit.

IV.

For the foregoing reasons, we will grant counsel's motion to withdraw and affirm the District Court's judgment.